NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JEFFREY CARRIER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  07-2739 (SRC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CITY OF PLAINFIELD, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for partial summary judgment by

Defendant City of Plainfield ("Defendant").  For the reasons set forth below, Defendant's motion

for partial summary judgment will be granted.

## BACKGROUND

This case arises out of a dispute over employment discrimination.  The following facts are

undisputed.  Plaintiff Jeffrey Carrier has been a Police Officer for Defendant since July of 1993.

Plaintiff sat for the promotional examination for sergeant in September, 2002.  The resulting list

of eligible candidates placed Plaintiff first on the list, while James Abney ("Abney") was second.

Jiles Ship ("Ship"), a city official for the City of Plainfield, made the decision to promote Abney

to sergeant, rather than Plaintiff.  In December of 2005, Plaintiff learned that he had been

"bypassed" for promotion.  Plaintiff is Caucasian and Abney is African-American.

On June 12, 2007, Plaintiff filed the Complaint, asserting three claims: 1) discrimination

in denying him a promotion on the basis of race, in violation of Title VII of the Civil Rights Act

of 1964; 2) discrimination in denying him a promotion on the basis of race, in violation of the

New Jersey Law Against Discrimination; and 3) violation of his rights to due process and equal

protection under the Fourteenth Amendment of the federal Constitution, pursuant to 42 U.S.C. §

1983.  On July 13, 2009, Defendant filed the instant motion for partial summary judgment,

seeking judgment on the First Count, for violation of Title VII, and the Third Count.

## ANALYSIS

**I.      Legal Standard**

      A.      Motion for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the

moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for

the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any

weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241,

247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show

affirmatively the absence of a genuine issue of material fact: it must show that, on all the

essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting

United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex,

477 U.S. at 322-23).

## II.    Defendant's motion for partial summary judgment

### A.    First Count: employment discrimination in violation of Title VII

Defendant moves for partial summary judgment on Plaintiff's employment discrimination

claim.  All disparate treatment[1] claims for employment discrimination under federal law are

analyzed by application of the <u>McDonnell Douglas</u> test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for
> discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first
> establish a prima facie case of discrimination. The burden then shifts to the
> employer to articulate a legitimate, nondiscriminatory reason for its employment
> action.  If the employer meets this burden, the presumption of intentional
> discrimination disappears, but the plaintiff can still prove disparate treatment by,
> for instance, offering evidence demonstrating that the employer's explanation is
> pretextual.  The Courts of Appeals have consistently utilized this burden-shifting
> approach when reviewing motions for summary judgment in disparate-treatment
> cases.

<u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 50 (2003) (citations omitted).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the

defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action.

<u>McDonnell Douglas</u>, 411 U.S. 792, 802 (1973).  The employer may satisfy the burden by

introducing evidence which, taken as true, would allow the factfinder to conclude that there was

a nondiscriminatory reason for the unfavorable employment decision.  <u>St. Mary's Honor Center

v. Hicks</u>, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually

motivated the decision.  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

---

[1]A disparate treatment case is one in which the employer treats some people less
favorably than others because of their membership in a protected class.  <u>See</u> <u>Int'l Bhd. of
Teamsters v. United States</u>, 431 U.S. 324, 335 n.15 (1977).

The burden of proving intent remains with the Plaintiff.  Id.

      If the defendant employer satisfies the burden, then "the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely then not a motivating or determinative cause of the adverse employment action."  Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

      The case law makes clear that, as to demonstrating pretext, "this standard places a difficult burden on the plaintiff."  Id. at 765.

> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quotation omitted).  Moreover:

> [T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff.  The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."  In other words, "it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

Id. at 146-147 (quoting St. Mary's, 509 U.S. at 519, 524).

      Although Defendant contends that Plaintiff has not made out a prima facie case, the Court need not address this issue, since Plaintiff's Title VII claim fails to survive at the third step of the McDonnell Douglas analysis.  See Miller v. Kindercare Learning Ctrs., Inc., 2009 U.S. App. LEXIS 16652 at *4 (3d Cir. July 29, 2009).

Fuentes gives Plaintiff two possible approaches to defeating Defendant's motion for summary judgment. Plaintiff does not attempt the second method (presenting affirmative evidence that an invidious discriminatory reason motivated the decision), but uses the first method only, offering evidence to cast doubt on each of the proffered legitimate reasons.

Defendants proffer the following reasons for the decision:

1.      The candidate selected "had only one minor discipline during the ten years preceding." (Def.'s 56.1 Stmt. ¶ 10.)

2.      The candidate selected had been named a "Top Cop" in 2003 by the National Association of Police Organizations. (Id. at ¶ 11.)

3.      The candidate selected had "received extensive outside training related to law enforcement." (Id.)

4.      The candidate selected had more experience as Acting Sergeant. (Id. at ¶ 12.)

5.      Plaintiff's three "prior disciplines" raised questions about Plaintiff's "ability to supervise others, follow departmental regulations and work well with the general public." (Id. at ¶ 13.)

6.      Plaintiff manifested a "lack of fitness to assume a leadership role" based on a statement to Internal Affairs pertaining to an incident in January of 2005. (Id. at ¶¶ 16-35.)

Plaintiff offered these responses to Defendant's proffered reasons:

1.      Plaintiff admitted the truth of this statement. (Pl.'s Resp. 56.1 Stmt. ¶ 10.)

2.      Plaintiff did not dispute this statement as to the "Top Cop" award. (Id. at ¶ 11.)

3.      Plaintiff did not respond to this statement about outside training.

6

4.      Plaintiff pointed to his certification, which states: "The only record that would accurately show how many times Abney or I worked as acting sergeant would be the daily log sheets."  (Id. at ¶ 12; Carrier Cert. ¶ 19.)

5.      Plaintiff admitted the truth of this statement, but argues that these reasons were not stated by Ship in his December, 2005 letter to the city administration at the time he nominated Abney.  (Pl.'s Resp. 56.1 Stmt. ¶ 13; Carrier Cert. Ex. B.)

6.      Plaintiff's response is discussed below.

Plaintiff's response to the sixth reason, regarding the statement to Internal Affairs about the January 2005 incident, has some complexity, but the bottom line is that Plaintiff does not offer evidence that raises any factual issue about whether there was an Internal Affairs report containing the statements alleged, whether Ship weighed the sixth reason in his decision, or whether this is a legitimate, non-discriminatory reason.  Instead, Plaintiff raises various legal and factual objections.

As a legal objection, Plaintiff contends that the report is not "evidentiary" but is instead a "conclusion."  (Pl.'s Resp. 56.1 Stmt. ¶ 17.)  This Court need not consider this distinction because it is immaterial in the present context.  The Court need not determine whether the Internal Affairs report is true.  In regard to the report, the sole question for the Court at this juncture is whether Plaintiff has offered evidence that casts doubt on the legitimacy of Defendant's assertion that one reason for the promotion decision was an inference based on the report.  Plaintiff has offered no evidence that casts doubt on Defendants' assertion that this was a reason for the decision, or from which a reasonable jury could conclude that the claim of reliance on the report was not legitimate but a pretext for illegal discrimination.  Plaintiff's efforts to cast

7

doubt on the factual accuracy of the report are not only irrelevant to this issue,[2] but, if allowed to

go before a jury, would be prejudicial and could serve only the purpose of confusing the jury.

Indeed, Plaintiff here seeks to muddy the waters by questioning the legitimacy of the Internal

Affairs report.  The accuracy of the report is not at issue: it is the legitimacy of the proffered

reason for the decision that is at issue, and Plaintiff has offered no evidence which casts doubt on

Defendant's assertion that the report provided a nondiscriminatory reason for the decision.

Defendant has proffered six reasons for the promotion decision.  Plaintiff has not

responded by offering affirmative evidence that illegal discrimination was the actual reason for

the decision, but has chosen the approach of casting doubt on the proffered reasons to show that

each reason was a fabrication.  The only evidence that Plaintiff offers to achieve this end is the

comparison of Ship's reasons as stated in the December 2005 letter with the reasons he stated in

his 2009 certification.

There are no evidentiary disputes about the memo sent by Jiles Ship to Norton Bonaparte,

City Administrator, on December 9, 2005.  The memo states that Abney had been selected for the

position and that Plaintiff was "by passed due to his disciplinary record."  (Carrier Cert. Ex. B.)

The memo continues: "On January 22, 2005, there was a recommendation for disciplinary action

due to his violation of the Plainfield Police Divisions Order(s) or Rule(s) and Regulation(s). . .

The Office of Professional Standards has sustained these charges."  (Id.)  Defendant has offered a

document titled "Plainfield Police Division Internal Affairs Report," dated September 22, 2005,

---

[2] The Third Circuit has stated: "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Fuentes, 32 F.3d at 765.

regarding a series of events that occurred in January and February of 2005.  (Def.'s Br. Ex. J.)
The document charges Plaintiff with violation of Division regulations.  (Id.)  There are no
disputes about the authenticity of this document.

The document states that a Mr. Harry Cohen, arrested for shoplifting, alleged that three
officers, one of whom was Plaintiff, had on a prior occasion handcuffed him, beaten him, and
thrown him down a flight of stairs.  (Def's Br. Ex. J at 7.)  The document states that the
confrontation was related to Cohen's theft of a carton of cigarettes from a store owned in part by
Plaintiff.  (Id.)  Summarizing the investigation, the document states: "The Officer's [sic]
statements all indicate that they were rough and stern with Mr. Cohen, in an obvious attempt to
intimidate Mr. Cohen into confessing to the theft and repayment for the monetary loss."  (Id.)
The report concluded: "[I]t was Police Officer Jeffrey Carrier, the senior Officer on scene that
took charge and had physical contact and almost all verbal contact with Mr. Cohen."  (Id. at 8.)
The document then charges Plaintiff with three violations: 1) violation of the oath of office, by
failing to advise Cohen of his Miranda rights; 2) failure to correctly perform his duties in his
authorship of the Preliminary Investigation Report; and 3) failure to notify a superior officer of
an intended police action.  (Id.)  The violations linked to numbered regulations charged in the
document correspond to the violations stated in Ship's December 9, 2005 memo.

Evidence of inconsistencies in the proffered reasons may be used to cast doubt on their
legitimacy.  Fuentes, 32 F.3d at 765.  A reasonable jury could look at the evidence of
inconsistency and conclude that the reasons that were proffered in 2009 in response to litigation
were a post hoc fabrication.  Making every reasonable inference in favor of Plaintiff, this leaves
Defendant with the reasons originally stated in Ship's letter in December of 2005, which stated

that Plaintiff was being "by passed due to his disciplinary record," with specific reference to the charges relating to the internal investigation.   (Carrier Cert. Ex. B.)  In order to defeat Defendant's motion for partial summary judgment, then, Plaintiff must point to evidence from which a reasonable jury could conclude that these reasons are a pretext concealing illegal discrimination, and that his disciplinary record did not actually motivate the decision not to promote him.  Plaintiff has offered no such evidence.  There are no factual disputes about the disciplinary record of the two candidates.  It is undisputed that the successful candidate had one disciplinary action in the ten years preceding the decision, while Plaintiff had three disciplinary actions in the eleven years preceding the decision.  The internal investigation report makes additional disciplinary charges against Plaintiff.  Plaintiff concedes that disciplinary charges were pending against him at the time of the promotional decision.  (Pl.'s Opp. Br. 13.)  No rational factfinder could receive this evidence and conclude that Plaintiff has met his burden of proving that the reason stated for the decision, Plaintiff's disciplinary record, was a pretext for illegal discrimination.  No reasonable jury could conclude from this evidence that a discriminatory animus motivated the employer to promote Abney over Plaintiff.

As a general rule, to show pretext by casting doubt on the employer's proffered reasons, a plaintiff must cast doubt on each reason:

> Put another way, to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact-finder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, that the proffered reason is a pretext).

Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 370 (3d Cir. 2008).  Nonetheless, the Third Circuit has held that, in some cases, a plaintiff need not cast doubt on every explanation, one at a time:

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on
> each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate
> reasons, and the plaintiff manages to cast substantial doubt on a fair number of
> them, the plaintiff may not need to discredit the remainder. That is because the
> factfinder's rejection of some of the defendant's proffered reasons may impede
> the employer's credibility seriously enough so that a factfinder may rationally
> disbelieve the remaining proffered reasons, even if no evidence undermining those
> remaining rationales in particular is available.

Fuentes, 32 F.3d at 764 n.7.  The Third Circuit has further explained: "We have applied the

principles explained in Fuentes to require plaintiffs to present evidence contradicting the core

facts put forward by the employer as the legitimate reason for its decision."  Kautz v. Met-Pro

Corp., 412 F.3d 463, 468 (3d Cir. 2005).

In the instant case, then, to defeat Defendant's motion for partial summary judgment,

Plaintiff may not need to cast doubt on every one of Defendant's proffered reasons.  Plaintiff

must, however, cast doubt on the core facts that the employer has put forward as the legitimate

reason.  The core facts in this case are the disciplinary records of the candidates, and there are no

disputes about those facts.  Plaintiff has put forth no evidence to cast doubt on Defendant's

primary explanation that Abney was chosen over Plaintiff because of his superior disciplinary

record.  Nor is Plaintiff's evidence of the inconsistency in the explanations (comparing Ship's

2009 declaration to his 2005 memo) substantial enough to cast doubt on every explanation stated

in the 2005 memo.  See Kautz, 412 F.3d at 476.  No reasonable factfinder could conclude from

the evidence of record that Defendant's claim that Abney was promoted over Plaintiff because of

their disciplinary records was false and a pretext and that the true reason for the promotion was

discrimination on the basis of race.  As such, Defendant's motion for partial summary judgment

on the Title VII claim will be granted.  See also Miller, 2009 U.S. App. LEXIS 16652 (affirming

the grant of summary judgment to defendants because plaintiff's "evidence never cast doubt on

the defendants' core assertion [of the reason] that they terminated her.")

Plaintiff's arguments of procedural impropriety in the disciplinary process against him

miss the point.  As discussed above, the question at this stage of the <u>McDonnell Douglas</u> analysis

is not whether the employer made a mistake in its decision, but whether the decision was

motivated by a discriminatory animus.  The question of whether the employer handled the

disciplinary process against Plaintiff correctly under the relevant law is independent of the

question of whether the reasons stated by Defendant are a pretext for illegal discrimination.

As to the First Count in Plaintiff's Complaint, for employment discrimination in violation

of Title VII, Plaintiff has failed to defeat Defendant's motion for partial summary judgment.  As

to the First Count, Defendant's motion for partial summary judgment will be granted.

B.      <u>Third Count: violation of the right to due process, pursuant to § 1983</u>

The Third Count of the Complaint asserts a claim, pursuant to 42 U.S.C. § 1983, for

violation of Plaintiff's Constitutionally-protected rights to due process and equal protection, by

"using race as a criteria for promotions."  (Compl. Third Count ¶ 9.)  Defendant moves for

summary judgment on this claim, contending that Plaintiff has no evidence to establish municipal

liability under <u>Monell</u>, and that the Complaint fails to state any claims for violations of Plaintiff's

rights to due process or equal protection.   In opposition, Plaintiff contends that the use of the

disciplinary charge as a basis for denying him a promotion violated his right to due process.

To begin with, this Court questions whether the Complaint does state a valid claim for

violation of the right to procedural due process.  The Complaint is quite vague about what the

defect in procedure was.  Plaintiff contends that he was deprived of a pre-discipline and post-

discipline hearing, and that he has been economically damaged by not receiving the increased pay

and benefits that would have come from the promotion.  The Complaint states that "Defendant

by using race as a criteria [sic] for promotions has violated Plaintiff's rights to due process," but

does not articulate a legal theory to explain the violation.  (Compl. Third Count ¶ 9.)  It is clear

that using race as a criterion for promotions could constitute employment discrimination in

violation of Title VII, but it is not clear how using race as a criterion for promotions would

constitute a procedural defect in the promotion decision process.  To the extent that Plaintiff

seeks to import a procedural defect in the discipline process – his not having a pre-discipline or

post-discipline hearing – into the promotion process, this Court finds that the discipline process

and the promotion selection process are distinct and separate, and rejects the argument that a

procedural defect in the former may constitute a procedural defect in the latter.[3]

The insufficiency of the Complaint becomes more salient when considering it in light of

this principle: "Once it is determined that due process applies, the question remains what process

is due."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  For the sake of discussion, were this

Court to find that Plaintiff's right to due process was violated, it would have to answer the

question of what process was due to him: what different procedure should Defendant have

followed in conducting the promotion selection process?  As discussed, to suggest a change in

the discipline process does not answer this question.  Neither the Complaint nor Plaintiff's brief

have any answer to this question, and this Court concludes that Plaintiff's Complaint fails to state

---

[3] Moreover, as Defendant observes, even if the claim of a procedural defect in the
discipline process were legally viable, because the disciplinary charges against Plaintiff were
eventually administratively dismissed, Plaintiff cannot be said to have suffered any deprivation of
property resulting from such procedural defects.

13

a valid claim for violation of Plaintiff's right to procedural due process in the process whereby he

was denied a promotion.

The Court need not rely on this point to decide Defendant's motion on the due process

claim, however, because there is a more salient problem in Plaintiff's procedural due process

case. Plaintiff's procedural due process argument in his opposition brief is crucially incomplete

and cannot succeed.

The Third Circuit recently restated the fundamental principles relevant to procedural due

process claims in employment cases as follows:

> In evaluating a procedural due process claim, we first determine whether the
> asserted individual interests are encompassed within the fourteenth amendment's
> protection of life, liberty, or property. Property interests are created and their
> dimensions are defined by existing rules or understandings that stem from an
> independent source such as state law – rules or understandings that secure certain
> benefits and that support claims of entitlement to those benefits. To have a
> property interest in a benefit, a person clearly must have more than an abstract
> need or desire for it. He must have more than a unilateral expectation of it. He
> must, instead, have a legitimate claim of entitlement to it.

Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (citations omitted). Thus, this Court

must first determine whether Plaintiff has established a property interest protected by the due

process clause. In the context of the instant case, which concerns a promotion, such a property

interest exists when a person has a legitimate claim of entitlement to the promotion.

An instructive case on this matter is Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir.

1984), in which the plaintiff complained that his right to procedural due process was violated

when the City of Philadelphia denied him a promotion. The Third Circuit looked to

Pennsylvania law to determine whether it gave the plaintiff a legitimate claim of entitlement to

the promotion, and concluded that it did not do so. Id. at 293. The Court therefore concluded:

> Robb fails to demonstrate a property interest that can form the basis of a
> fourteenth amendment due process claim cognizable under § 1983. Without
> meeting this threshold requirement, he may not be heard on the allegations that he
> suffered a denial of federally guaranteed due process rights because of the
> machinations of the defendants.

Id.  Following Robb, this Court must first determine whether Plaintiff has demonstrated a

legitimate claim of entitlement to the promotion under New Jersey law.  Neither Plaintiff's brief

nor the Complaint, however, point to any New Jersey law that establishes for Plaintiff a

legitimate claim of entitlement to the promotion.  The only New Jersey law Plaintiff's brief cites

is N.J. Stat. Ann. § 40A:14-149, which states:

> If any member or officer of the police department or force shall be suspended
> pending a hearing as a result of charges made against him, such hearing, except as
> otherwise provided by law, shall be commenced within 30 days from the date of
> the service of the copy of the complaint upon him, in default of which the charges
> shall be dismissed and said member or officer may be returned to duty.

This provision says nothing about entitlement to a promotion.  As discussed above, the question

of whether Plaintiff received procedurally correct discipline is distinct from the question of

whether Plaintiff had a legitimate claim of entitlement to the promotion.

Defendant points to New Jersey's "rule of three," which states that the appointing

authority shall "[a]ppoint one of the top three interested eligibles [] from an open competitive or

promotional list."  N.J.A.C. § 4A:4-4.8(a)(3).  Plaintiff has not disputed that this is the relevant

provision of the New Jersey Administrative Code, nor asserted that Defendant violated this

provision.  Because it appears that Defendant had the discretion under the Administrative Code

to appoint any one of the top three, and Plaintiff has not shown otherwise, Plaintiff has failed to

show a legitimate claim of entitlement to the promotion.  Absent a legitimate claim of

entitlement to the promotion under state law, Plaintiff has no cause of action for violation of his

right to due process.

As to Plaintiff's claim for violation of his right to procedural due process, Defendant has shown that it is entitled to judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 56(c).  Furthermore, Defendant's motion for partial summary judgment encompassed both substantive and procedural due process.  Plaintiff did not oppose Defendant's motion for partial summary judgment as to substantive due process, and this Court infers that Plaintiff has abandoned any claim he might have had of violation of any substantive due process rights.  As to Plaintiff's claims for violation of his Constitutionally-protected rights to due process of law, Defendant's motion for partial summary judgment will be granted.

     C.     <u>Third Count: violation of the right to equal protection, pursuant to § 1983</u>

Defendant's opening brief asserted that it sought summary judgment on both the due process and equal protection aspects of the Third Count, but the brief then focused only on the due process violations, and Plaintiff's opposition brief did not address the equal protection claims.  As a result, this Court Ordered that the parties provide supplementary briefing on the motion for summary judgment of claim for violation of Plaintiff's right to equal protection, pursuant to § 1983.

Plaintiff's supplementary brief offers somewhat contradictory arguments.  While acknowledging that, in <u>Engquist v. Or. Dep't of Agric.</u>, 128 S. Ct. 2146, 2149 (2008), the Supreme Court held that "a 'class-of-one' theory of equal protection has no place in the public employment context," the brief then contends that a "class of one" case is permitted when race is asserted as the basis for the equal protection violation.  (Pl.'s Supp. Br. 3.)  When race is asserted as the basis for the equal protection violation, however, it is not a "class of one" case.

16

Nor has Plaintiff made a "class of one" claim.  The Third Count of Plaintiff's Complaint

states:

> 8.    Defendant has had a history of skipping Caucasian candidates who were
>       ranked higher on the Department of Personnel's Merit System Fitness
>       Board's promotional list in favor of African American candidates.
>
> 9.    Defendant by using race as a criteria for promotions has violated
>       Plaintiff's rights to due process and equal protection under the law . . ."

(Compl. 6.)  This is a claim for a custom of violating Constitutional rights by race discrimination.

It relies on Plaintiff's membership in a protected class and is not a "class of one" claim.  Plaintiff

has no "class of one" claim, nor could he, in the public employment context, under Engquist.

As Defendant contends, because the only defendant in this case is a municipality, Plaintiff

must assert his equal protection claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692

(1978).  The Supreme Court has applied the following requirements to Monell claims:

> [I]n Monell and subsequent cases, we have required a plaintiff seeking to impose
> liability on a municipality under § 1983 to identify a municipal 'policy' or
> 'custom' that caused the plaintiff's injury.  Locating a 'policy' ensures that a
> municipality is held liable only for those deprivations resulting from the decisions
> of its duly constituted legislative body or of those officials whose acts may fairly
> be said to be those of the municipality.  Similarly, an act performed pursuant to a
> 'custom' that has not been formally approved by an appropriate decisionmaker
> may fairly subject a municipality to liability on the theory that the relevant
> practice is so widespread as to have the force of law. . .
>
> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly
> attributable to the municipality. The plaintiff must also demonstrate that, through
> its deliberate conduct, the municipality was the 'moving force' behind the injury
> alleged.  That is, a plaintiff must show that the municipal action was taken with
> the requisite degree of culpability and must demonstrate a direct causal link
> between the municipal action and the deprivation of federal rights. . .

Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  In line with a Monell claim,

the Complaint does allege that a discriminatory custom caused a violation of his federal rights.

To survive Defendant's motion for summary judgment on this claim, Plaintiff must offer evidence from which a reasonable jury could find that he has proven every element of his claim. Plaintiff has not done so.  Plaintiff's supplementary brief, in fact, cites to no evidence of record nor discusses <u>Monell</u> or any of its progeny.  Even giving Plaintiff's opposition brief the most favorable reading, it too does not offer evidence from which a reasonable jury could conclude that the City of Plainfield had discriminated against one Caucasian employee on the basis of race, much less that there existed a custom of such discrimination.  From the evidence Plaintiff has offered, no reasonable jury could find in favor of Plaintiff on a <u>Monell</u> claim.  As to the equal protection claim, Plaintiff has failed to defeat Defendant's motion.

As to Plaintiff's claim for violation of his right to equal protection, Defendant has shown that it is entitled to judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 56(c).  As to Plaintiff's claims for violation of his Constitutionally-protected right to equal protection of the law, Defendant's motion for partial summary judgment will be granted.

This Court will grant Defendant's motion for partial summary judgment on the First and Third Counts of the Complaint, and Judgment will be entered in Defendant's favor on those claims.  This resolves all federal claims and leaves only the Second Count, a claim under the law of the State of New Jersey.  Because the First and Third Counts provided the sole basis for federal question subject matter jurisdiction, this Court has the discretion to decline supplemental jurisdiction over the remaining state law claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction").  In the context of § 1367(c)(3), the grant of summary judgment is equivalent to the dismissal of a claim.  <u>See</u> <u>Tully</u>

v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) ("If it appears that the federal claim is subject to dismissal under F.R. Civ. P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.")  No extraordinary circumstances are present here, nor circumstances which would make the exercise of the Court's discretion to retain supplemental jurisdiction appropriate.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).  Pursuant to Federal Rule of Civil Procedure 12(h)(3), the remaining state law claims in the Complaint will be dismissed for lack of subject matter jurisdiction.  The Second Count of the Complaint will be dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, as to the First and Third Counts of the Complaint, this Court determines that Defendant has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Defendant's motion for partial summary judgment is granted and, as to the First and Third Counts of the Complaint, Judgment is entered in Defendant's favor.  The Court declines to exercise supplemental jurisdiction over the Second Count of the Complaint, and the Second Count is dismissed without prejudice for lack of subject matter jurisdiction.

　　s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: November 4, 2009

19